Luke VAN SCOY, Plaintiff,

v.

POWERMATIC, A DIVISION OF STANWICH INDUSTRIES, INC., Defendant.

No. 3: CV 89–1507.

United States District Court, M.D. Pennsylvania.

April 21, 1992.

Timothy B. Fisher, Gouldsboro, PA, for plaintiff.

Donald J.P. Sweeney, Philadelphia, PA, for defendant.

MEMORANDUM AND ORDER

CONABOY, Chief Judge.

I

On March 24, 1988, Plaintiff, Luke Van Scoy, while a senior at Pocono Mountain High School in Swiftwater, Pennsylvania, injured the middle and index fingers of his right hand, while using a band saw manufactured by the Defendant. The band saw had been purchased some four years previously by the school district and the Plaintiff was using it in the course of his studies as a student in the industrial arts department.

Plaintiff thereafter instituted this action seeking damages from the Defendant, claiming the right to recover under the product liability theory, alleging that the product was defective and under a negligence theory, claiming that the Defendant was negligent in the manufacture of the product and in their conduct in placing it on the market for use.

At the conclusion of the testimony, a normally used type of verdict slip was submitted to the jury. It contained nine questions. In answer to Question # 2 "Did the Plaintiff, Luke Van Scoy, prove that the Defendant, Powermatic's, saw was defective", the jury responded "yes". In answer to Question # 3 "If your answer to Question # 2 was yes, was the defect a substantial factor in bringing about the injuries to the Plaintiff, Luke Van Scoy", the jury responded "no". In answer to Question # 4 "Did the Plaintiff, Luke Van Scoy, prove that the Defendant, Powermatic, was negligent in putting the saw in question on the market", the jury answered "no".

Having so answered the foregoing questions, and in conformity with instructions of the Court, the jury returned these responses to the Court as their verdict, and a verdict was thereupon entered in favor of the Defendant, Powermatic.

The Plaintiff has filed a motion seeking a new trial and cites five arguments in support of the motion. The Defendant has responded, contravening each of the arguments. For the reasons which follow, we will deny the motion for new trial.

## II

The saw in question is a rather large piece of equipment which includes a table on which the material to be inserted into the saw is placed. The actual "saw" is a steel band which moves at a high rate of speed around a driving wheel and passes through an opening in the table with the teeth of the saw facing the operator. The product to be worked on is fed into the teeth of the saw by the operator. The project on which the Plaintiff was working was an effort to take a square block of wood and convert it to a round piece by cutting off the four square corners. The block of wood was approximately five inches in height and approximately four to five inches square. The machine was set so that certain roller guides would be placed slightly above the top of the piece on which the operator was working. The piece on which the operator was working would then be fed into the machine below the roller guide. Of particular interest in this case was a section of the blade above the roller guides described as being between one and a half and one and three quarter inches in length, which was also exposed with the teeth of the blade facing the operator. Significant issues in this case were whether there should have been a guard covering this upper exposed area and whether or not the Plaintiff's injured fingers entered into the upper exposed area or the area below the roller guides where

the product was being fed.[1] The factual and legal issues surrounding both of these matters were hotly contested and there was conflicting testimony concerning each issue.

## III

From the testimony and evidence in this case the jury could very easily have found that on the day in question the Plaintiff was attempting to pass a square block through the blade to round off the corners of the block; that the block was approximately five inches in height and four inches square; that the roller guides were approximately one half to one inch above the top of the block; that there was no guard on that part of the blade below the roller guides since the machine would have been useless with such a guard; that there was no guard in that area immediately above the roller blades; that as the Plaintiff moved the block into the blade his left hand was on one side of the block and his right hand was either on the other side or on the top of the block; that as the block was fed into the machine, for some reason, the block tipped slightly, forcing the Plaintiff's right hand into the exposed blade; that the natural forces on the block and the natural resulting movement of the Plaintiff's right hand, would bring it into contact with that portion of the blade below the roller guides and not above the roller guides; that the injuries to the Plaintiff's hand are not consistent with his hand turning as the Plaintiff's expert opined and were consistent with the hand moving directly into the blade as the Defendant's expert opined; that it would have made the machine safer to have a guard on the portion of the blade above the roller guides; but that the lack of such a guard did not contribute to and would not have prevented the accident in this case; and that the Plaintiff did not prove by the fair weight and preponderance of the evidence that the Defendant

1. Plaintiff argued there should have been a guard over the area above the roller guides. None of the school employees remembered seeing a guard when the machine was delivered. Defendant's witnesses testified a guard was always sent in a separate small bag attached to the machine, but argued it would have made no difference in this accident, since they claim the Plaintiff's hand had to contact the blade below the roller guides.

was negligent in the manufacture, production, or distribution of this product.

## IV

Reference to the Plaintiff's brief and Plaintiff counsel's argument throughout the trial, of course, immediately reveals the Plaintiff disagrees with these findings and sought to have the jury make other findings. It is not the Court's duty, however, on a motion for new trial, to second-guess or to countervail a jury's reasonable determination, even in the instance where a Court disagrees with the jury's findings. Indeed, unless there is a significant miscarriage of justice, the Court must consider the evidence on such a motion in a light most favorable to the verdict winner.

The Plaintiff makes the common error of arguing on the basis of facts he wishes the jury would have accepted. And, also on the basis of arguments that are nowhere substantiated in the testimony or evidence. He refers, for instance, on several occasions, to another student being an "eyewitness" to the accident. That student's testimony however, was to the effect that he did see the placement of the Plaintiff's hands on the block immediately before the accident, but that he was not, in fact, an eyewitness to the accident itself. Additionally, where he placed the Plaintiff's hands is of no benefit to the Plaintiff, even if the jury believed his testimony, because they obviously subscribed to the testimony of the Defendant's expert who stated that the Plaintiff's hand had to enter the blade below the area where the argument is made about the missing guard.

■ Both parties agree on the standard the Court must follow in considering whether to grant a new trial. A new trial is generally warranted only when the trial judge is satisfied that there has been a miscarriage of justice. Such might occur when a verdict is technically supported by legally sufficient evidence, but is contrary to the great weight of the evidence, making a new trial necessary under general concepts of fairness and justice. See *Bhaya v. Westinghouse Electric Corp.*, 832 F.2d 258 (3d Cir.1987); *Roebuck v. Drexel Universi-*

*ty*, 852 F.2d 715 (3d Cir.1988); *EEOC v. Delaware Dept. of Health and Social Services*, 865 F.2d 1408 (3d Cir.1989); *Bruno v. W.B. Saunders Co. et al.*, 882 F.2d 760 (3d Cir.1989). One must be ever alert to the fact, however, that in considering such a motion the evaluation of witness credibility and of disputed testimony are matters clearly and solely within the province of the jury and in the absence of clear error, that province should not be invaded by the Court.

## V

### A

■ Plaintiff first argues that the negative response by the jury to special verdict question #3 was against the weight of the credible evidence. In response to Question #3, the jury found that the defect in the machine was not a substantial factor in bringing about the injuries to the Plaintiff. We have explained above that the experts disagreed on how the injuries to this Plaintiff could have come about. It was the Plaintiff's own testimony that he felt his hand entered the area above the roller guides where he also claimed a guard should have been placed. It was his expert's testimony that in order to get into that position it had to move up from the top of the block and to turn over, entering the blade in a palm's up position, whereas the Defendant's expert testified that in order for the Plaintiff to suffer the injury described, and agreed upon, the hand would have had to enter the lower part of the blade with the hand in the palm's down position. This is a critical difference of opinion and apparently the jury believed the Defendant's explanation. Under such circumstances, the answer to Question #3 is very reasonable since the perceived defect (lack of a guard on the upper part of the blade) would have had nothing to do with causation of the accident.

### B

■ The Plaintiff next argues that the jury's answer to Question #4, that the Plaintiff failed to prove that the Defendant

was negligent in putting the saw in question on the market, is against the weight of the credible evidence.

In this section of his brief, the Plaintiff seems to argue that the jury should have believed his testimony about the need for more extensive warnings or the need of the Defendant to prove positively that the machine arrived at the school with the guard in place. At the same time, the Plaintiff acknowledges that it was his duty to prove by the fair weight and preponderance of the evidence, that the Defendant was negligent. Throughout the Plaintiff's argument there is a continual mixing up of the criteria used in product liability and negligence cases. Obviously the standards are different and the jury was instructed on both standards. We find no error in this finding by the jury.

## C

 The Plaintiff next argues that the jury's positive answer to special verdict question # 2 (that the product was defective) and the jury's negative answer to verdict question # 4 (that the Plaintiff did not prove the Defendant was negligent) are "inconsistent in law and fact". Here, again, we point out that the Plaintiff misapplies the theories of law applicable to each of the prongs of his lawsuit against the Defendant. Under Pennsylvania Law, in a products liability case, the Plaintiff must prove that the product was defective as put on the market and, secondly, that the defect was a substantial factor in bringing about his injury. He can be successful in such a case, even if it is shown that the Defendant used all due care in its manufacturing process. *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Azzarelo v. Black Bros.*, 480 Pa. 547, 391 A.2d 1020 (1978). On the other hand, in the negligence aspect of his case, in order to recover, the Plaintiff must not only prove that the product was defective and that the defect caused his injury, but in addition, he must prove that in manufacturing or supplying the product, the Defendant failed to exercise due care.

 It is clear then that the theories of product liability and negligence are separate and different and there is no inconsistency in a jury finding that there is a defect in a product, but that a Plaintiff has failed to prove negligence on Defendant's part.

## D

 Plaintiff next argues that the trial court committed reversible area requiring a new trial by failing to properly instruct the jury, as requested by the Plaintiff, as to what constitutes, a "substantial factor" in respect to causation and also "to concurrent or multiple causes".

Because the conduct of the school district, through its agents (teachers and maintenance staff) was involved in this case, and because all parties agreed that the school district was immune from liability under Plaintiff's theories, the Court, at the request of counsel, instructed the jury about that reality. The instruction made clear to the jury that the conduct of the school district should not be considered in determining the Defendant's liability. Indeed, on four to five separate occasions, the jury was instructed about the "substantial factor" theory of the Plaintiff in establishing responsibility on the part of the Defendant. To argue that the jury was confused about the relationship of the school district's employees' conduct to that of the Defendant, is pure speculation. The fact that Plaintiff's counsel spoke to a member of the jury and now has a perception that the juror was somehow confused is neither persuasive with this Court nor should it properly be considered in the context of this motion. What is important and controlling is that the Court followed in substantial and repeated fashion, the standard jury instructions promulgated by the Pennsylvania Supreme Court under its rule making authority. (See Pennsylvania Standard Jury Instructions Sections 3.25 and 8.04). Additionally, we point out that the use of separate questions on the verdict slip is designed to give the jury additional guidance in making certain that they considered these questions as to each party separately.

## E

 Plaintiff's final argument goes to a logistical matter which occurred during the jury's deliberations. Plaintiff here argues that the jury's process was "thwarted and frustrated" because the jury did not receive a requested "ruler" and further instructions on the definition of "negligence" because Defendant's counsel was not "present in the courthouse, causing a delay in the jury receiving the requested information".

During deliberations the jury submitted a written request, per instructions of the Court, seeking additional instruction on the definition of negligence and requesting a ruler for its use. As is appropriate and this Court's common practice, known to both counsel in this case, we summoned both counsel to meet with the Court before giving them the response to the question. It is true, that it took approximately 10 or 12 minutes for defense counsel to arrive at the courthouse and for the Court to reveal the request and discuss it briefly.[2] While this was in process, the Court was notified that the jury had arrived at a verdict and was no longer in need of a response to the question. Plaintiff now argues that such a delay in answering the question somehow prevented the Plaintiff from having a "fully informed jury" to decide the issue of negligence.

Plaintiff's counsel bases his argument on this issue on an alleged discussion with the "foreman of the jury" after the trial and states that the juror indicated that the "jury had become tired of waiting and did not know why they did not get the answer to their request". That conversation, even if believed in full, and in spite of it being taken out of context, would hardly amount to a factual basis on which one could conclude that the jury was unprepared or uninformed or that there was a lack of care on their part in properly considering all of the evidence in this case.[3]

**2.** No objection was made to this process at the time of trial.

**3.** After reading the verdict the Court inquired if it was the verdict of the whole jury and the

## VI

The Court is not unsympathetic to the Plaintiff's frustration with the need to go through this trial for the second time and, in view of the nasty injury to his dominant hand.

A review of the record in this case, however, with due respect to the briefs and arguments made by counsel, does not persuade us that the jury's verdict was inconsistent with, or contrary to the law, or against the weight of the evidence. Under the circumstances, we conclude that there is no merit to the arguments made in furtherance of the motion for new trial, and the motion will be denied.

foreman answered affirmatively. Thereafter, the jury was polled and each member affirmed the verdict.