Mary MOSLEY, Plaintiff,

v.

Kirk KELLY, Ph.D., Emily Chesnutt,
and the City of Chattanooga,
Defendants.

No. 1;96–CV–392.

United States District Court,
E.D. Tennessee,
at Chattanooga.

Sept. 15, 1999.

Andrew L. Berke, Berke, Berke & Berke, Chattanooga, TN, for Mary Mosley, plaintiff.

Kenneth O. Fritz, Michael A. McMahan, Nelson, McMahan, Parker & Noblett, Chattanooga, TN, for defendants.

## MEMORANDUM

COLLIER, District Judge.

This case went to trial on two causes of action, one federal and one state. The first cause of action is the claim of Plaintiff Mary Mosley ("Mosley") that Defendants Dr. Kirk Kelly ("Kelly"), Emily Chesnutt Baker ("Baker"), and the City of Chattanooga (all three defendants collectively will be referred to as ("Defendants") violated 42 U.S.C. § 1983 by depriving her of her federally protected rights. The second cause of action is Mosley's state law Tennessee Education Truth in Reporting and Employee Protection Act (hereinafter referred to as the "Education Truth in Reporting Act" or "the Act"), Tenn.Code Ann. § 49–50–1401 to 1411, claim.

On July 9, 1999, the jury found for Mosley on her 42 U.S.C. § 1983 claim against Defendants Kelly and Baker[1] and awarded Mosley back pay damages in the amount of $22,250 (Court File No. 44). The jury also found for Mosley on her Tennessee Education Truth in Reporting and Employee Protection Act claim under Tenn.Code Ann. § 49–50–1409 against defendants Kelly, Baker, and the City of Chattanooga and awarded Mosley compen-satory damages in the amount of $125,000 (Id).

The case is now before the Court on Defendants' Motion for Judgment Notwithstanding the Verdict, New Trial, or Remittitur (Court File No. 47). Mosley filed a response (Court File No. 52). After reviewing the defendants' motion and carefully reviewing the Act, the Court deemed it necessary to obtain more analysis of the purpose and interpretation of the Act so the Court requested additional briefing regarding the proper construction of Tenn. Code Ann. § 49–50–1409 (Court File No. 51). Pursuant to the Court's request, the defendants filed a brief on this issue (Court File No. 54). Mosley also appears to have responded to the Court's order in conjunction with her response to the defendants' original motion (See Court File No. 52, p. 7 n. 2).

For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** the defendants' motion. Defendant's motion will be **GRANTED** to the extent it requests a judgment as a matter of law on Mosley's state law claim under Tenn.Code Ann. § 49–50–1409. As this was the only remaining claim asserted against defendant the City of Chattanooga, this will result in the City of Chattanooga being dismissed from this action. Pursuant to a request made by Mosley in her response, the Court will **GRANT** Mosley a new trial solely on the issue of compensatory damages on Mosley's claim under 42 U.S.C. § 1983. Defendants' motion will be **DENIED** to the extent it requests any other relief. This means the Court will not disturb the jury's verdict awarding Mosley $22,500 in back pay damages on her section 1983 claim. The Court will, however, **VACATE** the final judgment entered by the Clerk of the Court on July 12, 1999 (Court File No. 45). A new judgment will be entered following the retrial of this case

---

1. After the presentation of Mosley's case in chief, the Court granted Defendants' motions for judgments as a matter of law as to several defendants who were sued as members of the Chattanooga School Board and the former superintendent of the Chattanooga School System, Dr. Harry Reynolds. The Court also granted Defendant's motion with respect to the City of Chattanooga on the section 1983 claim.

on the issue of compensatory damages for the section 1983 claim.

## I. FACTS

Taking the strongest legitimate view of the evidence in favor of Mosley, allowing her all reasonable inferences in her favor, and discarding all countervailing evidence, (as the Court must in following the Tennessee standard) what follows is a chronology of the facts in this case as they relate to the Education Truth in Reporting Act claim.

Mosley began working as a full time teacher in the Chattanooga public school system for the 1995–1996 school year at the Alton Park Middle School under what the school system referred to as an end-of-year contract. Although Mosley's undergraduate degree was in Health and Physical Education and she did not have a strong science background, Mosley was hired to teach seventh grade science. Prior to her full-time employment with the Chattanooga school system, Mosley was employed as a substitute teacher in the Chattanooga school system at Howard High School. In her teaching position at Alton Park, Mosley held a probationary teacher's license. Under an end-of-year contract there was no guarantee her contract would be renewed or that she would have future employment with the school system.

Under Tennessee's career ladder teacher progression program, a teacher is first issued a probationary license. If the teacher with a probationary teacher's license performs at an acceptable level as evidenced by an evaluation process conducted by senior teachers and/or administrators, the teacher receives an apprentice license. The top of the career ladder is a professional teacher's license.

In November of 1995 two incidents occurred in Mosley's classroom involving students and knives. In the first incident, Mosley noticed a student with a small folding knife tapping the knife on the student's desk. Mosley took the knife from the student and went to the principal's office to report the incident to the school principal, defendant Kelly. As she waited for Kelly, Mosley wrote out a referral incident report, a standard procedure in taking a student to the principal's office. When Mosley inquired whether the incident would be reported to the Chattanooga Police Department, Kelly hesitated in responding. Kelly did call the police and the student was prosecuted in state juvenile court[2]. Mosley swore out the complaint and may have testified as a witness in the state juvenile proceeding.

In the second incident, Mosley was walking about her classroom when she noticed a small straight knife sticking out of the pocket of one of her students. When Mosley asked this student about the knife, the student said she had found it on the ground on the way to school that morning. This student was a special education student with learning disabilities. Mosley reported this incident to Kelly also. When she asked Kelly about referring this incident to the police, Kelly responded neither of them would contact the police. Later that day after leaving school Mosley personally called the police and reported the incident. Mosley also filled out a police incident report on this incident.

On November 16, 1995, a short story appeared in the inner pages of the afternoon paper, the Chattanooga News–Free

---

2. It is not at all clear that Kelly or Mosley had any legal obligation under Tennessee law to report the incident to the local police. *Tenn. Code Ann.* § 49–6–4209 requires school principals "who have reasonable suspicion to believe" that a student is unlawfully carrying certain weapons upon school grounds to report such violations to "the appropriate authorities." The specific Tennessee statutes prohibiting possession of knives only prohibit knives with a blade length of more than four inches and where the knife is possessed with the "intent to go armed." *Tenn.Code Ann.* § 39–17–1307 and § 39–17–1309. The testimony was clear from both sides the knife in the first incident did not have a blade length exceeding four inches.

Press, about the incident. This story was simply a short recitation that a student had been found in possession of a knife at the Alton Park Middle School. The story was not critical of the school or the Chattanooga school system.

After this second incident Kelly and Baker, the assistant principal, began treating Mosley poorly. They would make faces when she passed and refused to grant her any assistance as a teacher.

At the end of the year Mosley received a poor evaluation by Kelly and Baker. Kelly and Baker recommended that Mosley not be hired for the next year. Kelly and Baker also submitted materials to the state that prevented Mosley from advancing to the next level of certification.

## II. DISCUSSION

Defendants argue they are entitled to judgment notwithstanding the verdict, a new trial, or remittitur on Mosley's claim under *Tenn.Code Ann.* § 49–50–1409. Defendants also argue they are entitled to judgment notwithstanding the verdict or a new trial on Mosley's claim under 42 U.S.C. § 1983. The Court will separately address these arguments as they relate to each claim.

### A. Mosley's Claim under *Tenn.Code Ann.* § 49–50–1409

Defendants first argue they are entitled to judgment notwithstanding the verdict. This argument is simply a request for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50. *See K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir.1996) (commenting that the correct terminology for a Rule 50 motion is a motion for judgment as a matter of law, not judgment notwithstanding the verdict). Rule 50, in pertinent part, states:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

*Fed.R.Civ.P.* 50(a)

When the Rule 50 motion is denied at trial and the moving party seeks to renew the motion after trial, which the defendants seek to do here, Rule 50(b) applies. That rule states:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law.

*Fed.R.Civ.P.* 50(b).

As the defendants challenge Mosley's state law claim, the Court must view the evidence in the same manner as a state court would if it was presented with the defendants' motion. *See K & T Enters.*, 97 F.3d at 176 (district court should apply law of the forum state when reviewing Rule 50 motion challenging state law claims); *TGC Corporation v. HTM Sports*, 896 F.Supp.

751, 753 (E.D.Tenn.1995). In Tennessee, that standard requires the Court to:

> take the strongest legitimate view of the evidence in favor of the opponent of the motion, allow all reasonable inferences in his or her favor, discard all countervailing evidence, and deny the motion where there is any doubt as to the conclusions to be [drawn] from the whole evidence. A verdict should not be directed during, or after, trial except where a reasonable mind could draw but one conclusion.

*Arms v. State Farm Fire & Cas. Co.,* 731 F.2d 1245, 1248 *(quoting Holmes v. Wilson,* 551 S.W.2d 682, 685. (Tenn.1977))..

The jury found defendants Kelly, Baker, and the City of Chattanooga liable on Mosley's state law claim under the Education Truth in Reporting Act, *Tenn.Code Ann.* § 49–50–1409.

The Court must consider the Act and then determine whether the facts proven by Mosley would allow a reasonable juror to find in her favor. The first step in this process is to consider the statute under which Mosley's claim was brought.

### 1. *Section 49–50–1409*

Section 49–50–1409 is titled "Civil action against party causing disciplinary action against reporting person." It provides in full:

> (a) Any person reporting under the provisions of this part shall have a civil cause of action against any person or employer who causes a disciplinary action or threat of disciplinary action against the reporting person. An action commenced pursuant to this part may seek appropriate injunctive relief or damages for each violation of this section.
>
> (b) A court, in rendering a judgment over a disciplinary action against a person reporting pursuant to this part, shall order, as the court considers appropriate, reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies.

> A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees.

Construction of § 1409 and the Education Truth in Reporting Act is a matter of first impression. No Tennessee court has construed § 1409 nor has the United States Court of Appeals for the Sixth Circuit. Prior to trial the parties did not file briefs on the proper construction of § 1409. The Court will endeavor to construe § 1409 at this time.

### 2. *"Any person reporting"*

The Court concludes Mosley meets the definition of person which the Act defines to include "members of the local board of education, the superintendent or director of the school system, supervisors, principals and other individual school system employees." *Tenn.Code Ann.* § 49–50–1403(3). As a full time school teacher, Mosley was an "individual school system employee[ ]." The Court also concludes Mosley suffered a disciplinary action which the Act defines as "any direct or indirect form of discipline or penalty, including, but not limited to, dismissal, demotion, transfer, reassignment, suspension, reprimand, admonishment, reduction in force, withholding of work, unsatisfactory or below standard performance evaluation, or the threat of such discipline or penalty." *Tenn.Code Ann.* § 49–50–1403(1). Mosley received a below standard performance evaluation. Her contract was not renewed for the following year, and Kelly and Baker recommended that she not advance to the next step on the teacher's career ladder. The Court concludes these actions fall within the Act's definition of disciplinary action.

### 3. *"Reporting under the provisions of this part"*

The next issue that must be considered, however, is whether Mosley was "reporting under the provisions of this part" and if so, whether there was a causal connec-

tion between her reporting and the disciplinary action.

The first issue the Court must determine is what it means to "report[ ] under the provisions of this part." In *Jordan v. Baptist Three Rivers Hospital,* 984 S.W.2d 593, 599 (Tenn.1999), the Tennessee Supreme Court recently stated the court's role in construing statutes. As the *Jordan* Court stated:

> [The court's] role in statutory interpretation is to ascertain and to effectuate the legislature's intent. *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn.1993). Generally, legislative intent shall be derived from the plain and ordinary meaning of the statutory language when a statute's language is unambiguous. *Carson Creek Vacation Resorts, Inc. v. Department of Revenue,* 865 S.W.2d 1, 2 (Tenn. 1993). When a statute's language is ambiguous and the parties legitimately derive different interpretations, we must look to the entire statutory scheme to ascertain the legislative intent. *Owens v. State,* 908 S.W.2d 923, 926 (Tenn. 1995).

*Id.* at 599. The language of section 49–50–1409 is ambiguous.[3] The statute does not define what it means to "report[ ] under this provisions of the part." Thus, the Court will follow the dictates of the Tennessee Supreme Court and review the entire statutory scheme in an attempt to ascertain the legislative intent.

#### 4. Statutory purpose

Section 49–50–1402 describes the purpose of the Act as follows:

> (a) The purpose of this part is to discourage persons, whether employed, elected or appointed, who are required to furnish statistical data, reports or other information to local or state departments, agencies, or legislative bodies, from knowingly and willfully making or causing to be made any false or inaccurate compilation of statistical data, reports or information related to the operation of a local education agency as defined in § 49–1–103. It is the intent of the general assembly to reduce the waste and mismanagement of public education funds, to reduce abuses in governmental authority and to prevent illegal and unethical practices.
>
> (b) To help achieve these objectives, the general assembly declares that public education employees should be encouraged to disclose information on actions of local education agencies that are not in the public interest, and that legislation is needed to ensure that any employee making such disclosures shall not be subject to disciplinary measures, discrimination or harassment by any public official.

Viewing only section 49–50–1402(a), the legislature's purpose in passing this Act can be divided as follows: One purpose of the Act is to (1) discourage persons, (2) who are required to furnish statistical data, reports or other information, (3) to local or state departments, agencies, or legislative bodies, (4) from knowingly and willfully making or causing to be made, (5) any false or inaccurate compilation of statistical data, reports or information, (6) that are related to the operation of a local education agency.

One readily sees from section 49–50–1402(a) that certain "persons" are sought to be discouraged from taking certain action. This raises the question whether the person referred to in section 49–50–1402(a) is the same person who has the cause of action under section 49–50–1409. The Court asked the parties to brief this issue. The parties are in agreement that the "person" referred to in section 49–50–1402 is not meant to be the same "person" referred to in section 49–50–1409. The Court also agrees this is the most reasonable interpretation of the Act as it is un-

---

**3.** Recognizing that the statute was not drafted with sufficient clarity to inform the Court and that the construction of the statute was of critical importance in deciding the parties' motions, the Court earlier requested additional briefing from the parties on the proper construction of section 49–50–1409 (*See* Court File No. 51).

likely the legislature would create a cause of action under section 49–50–1409 for a person they were attempting to discourage from engaging in certain activities[4]. *See Tenn. Code Ann.* § 49–50–1402(a).

Viewing section 49–50–1402(b) in light of the observations already made regarding the purpose delineated in section 49–50–1402(a) reveals the legislature intended to achieve the objectives in section 49–50–1402(a) by enacting certain protections which would encourage public education employees to disclose "actions of local education agencies that are not in the public interest." However, since 49–50–1402(b) is meant to help achieve the objectives in section 49–50–1402(a), the phrase "actions of local education agencies that are not in the public interest" is not as broad as it appears. When this phrase is read in light of section 49–50–1402(b), the actions that are not in the public interest must refer to the acts of the "person" who was "required to furnish statistical data, reports or other information to local or state departments, agencies, or legislative bodies" but who "knowingly and willfully" made or caused to be made "any false or inaccurate compilation of statistical data, reports, or information" that was "related to the operation of a local education agency." The purposes described in section 49–50–1402 also must be read in light of the "disclosure of information" definition listed in section 49–50–1403(2) which states:

"Disclosure of information" means the written provision of evidence to any person, the department of education, a legislator, or individual employee of the department or general assembly, or testimony before any committee of the general assembly, regarding any action, policy, regulation, practice or procedure, including, but not limited to, the waste of public education funds, mismanagement, falsification of state required reports, inaccurate compilation of statisti-

cal data or reports, or abuse of authority by locally employed, elected or appointed officials or employees of a local education agency.

Thus, for Mosley's claim to fit within the purposes of the Act, the legislature had to have had the intent to discourage persons who were required to make reports about students carrying knives to school from knowingly and willfully making or causing to be made any false or inaccurate report related to the operation of a local education agency. The legislature also had to have had the intent that these "persons" would be discouraged from taking this action if the legislature encouraged individuals like Mosley to make a "disclosure of [the] information."

However, the final sentence in section 49–50–1402(a) when viewed in light of the other pertinent provisions of the Act makes clear the legislature did not intend to address allegations such as Mosley's. The last sentence in 49–50–1402(a) states, "It is the intent of the general assembly to reduce the waste and mismanagement of public education funds, to reduce abuses in governmental authority and to prevent illegal and unethical practices." At first glance, the phrases "abuses in governmental authority" and "prevent[ion][of] illegal and unethical practices" would appear to be broad. However, when these phrases are viewed in light of the rest of the Act, it is clear the legislature had a narrower intent. Namely, the abuses of governmental authority and illegal and unethical practices the legislature is concerned about are activities prohibited by sections 49–50–1404 and 49–50–1405 of the Act.

### 5. *The Statutory Scheme—Sections 1404 through 1407*

Sections 49–50–1404, 49–50–1405, 49–50–1406, and 49–50–1407 should be viewed

---

4. This disposes of the somewhat implausible argument that it was not Kelly who was the person required to furnish information but rather it was Mosley who was required to report. This interpretation would mean that

Mosley would be both the person required to report and the person who had the cause of action. Thus it is clear, that the statute must only refer to Kelly.

collectively as these sections effectuate the purpose of section 49–50–1402(a). These sections provide as follows:

#### 49–50–1404 False statements to state or government employees, officials or entities.

No person or persons required by state law, or rules or regulations promulgated pursuant to such laws, to collect, manage, review and maintain accurate records pertaining to the operation of a local education agency shall knowingly and willfully make or cause to be made any false statement in any detail of statistical or financial data, reports or other information requested or required by a state official, employee, agency, department, board, commission, or other body in the executive branch of state government, or any board, commission, committee, member or employee of the legislative branch of state government.

#### 49–50–1405 False statements to law enforcement agencies or the judiciary.

No person or persons required by state law, or rules or regulations promulgated pursuant to such laws, to collect, manage, review and maintain accurate records pertaining to the operation of a local education agency shall knowingly and willfully make or cause to be made any false statement in any detail of statistical or financial data, reports, board minutes or other information requested or required by law enforcement agencies, the judiciary or any member or employee of a law enforcement agency or the judiciary.

#### 49–50–1406 Penalties.

Should any person be found guilty of knowingly and willfully making or causing to be made any false statement or report, or otherwise violating the requirements of §§ 49–50–1404 and 49–50–1405, that person shall forfeit all pay and compensation for the position held for a period not to exceed one (1) year, be subject to dismissal, removal or ouster from such office or position, and be ineligible for election or appointment for the same or a similar position for five (5) years.

#### 49–50–1407 Liability to agency or department.

Any person found to have personally profited from any violation of §§ 49–50–1404 and 49–50–1405 shall be liable to the affected local education agency or state department or agency in an amount not to exceed actual money expended or lost and not administratively recoverable, plus the costs of any legal proceedings initiated by the affected local education agency or state department or agency.

Sections 49–50–1404, 49–50–1405, 49–50–1406, and 49–50–1407 are all meant to discourage persons from knowingly and willfully making or causing to be made any false reports related to the operation of a local education agency. Section 49–50–1404 prohibits "persons" who are required to "collect, manage, review and maintain accurate records pertaining to the operation of a local education agency" from "knowingly and willfully" making or causing to be made "any false statement" to either the executive or legislative branch of state government. Section 49–50–1405 contains a similar prohibition except it prohibits false statements to any law enforcement agency or the judiciary. Sections 49–50–1406 and 49–50–1407 lists the penalties for any person who is found to have violated sections 49–50–1404 or 49–50–1405. As can also be from section 49–50–1407 which permits local agencies or state departments to recover monies from any person who profited from violating section 49–50–1404 or 49–50–1405, the legislature was particularly concerned about discouraging waste or mismanagement of public education funds.

#### 6. The Statutory Scheme—Sections 1408 and 1409

Sections 49–50–1408 and 49–50–1409 should also be read collectively as these sections effectuate the purpose listed in section 49–50–1402(b). Sections 49–50–1408 and 49–50–1409 provide:

**49–50–1408 Reports of alleged falsification, waste or mismanagement.**

(a) Any person having knowledge of a knowing or willful falsification within the meaning of §§ 49–50–1404 and 49–50–1405, or the waste or mismanagement of public education funds, may report or disclose such falsification, waste or mismanagement to the department of education or committee of the general assembly, or individual official, member or employee of the department or committee.

(b) The department shall make a thorough investigation of any written report of falsification, waste or mismanagement. No investigation of anonymous reports shall be required by this part. Reports of alleged falsification, waste or mismanagement shall be confidential only to the extent the person reporting requests that the person reporting's name not be revealed.

(c) No penalty shall attach to the failure to report and a person reporting shall be presumed to be acting in good faith and shall thereby be immune from any liability, civil or criminal, that might otherwise be incurred or imposed for such reporting.

**49–50–1409 Civil action against party causing disciplinary action against reporting person.**

(a) Any person reporting under the provisions of this part shall have a civil cause of action against any person or employer who causes a disciplinary action or threat of disciplinary action against the reporting person. An action commenced pursuant to this part may seek appropriate injunctive relief or damages for each violation of this section.

(b) A court, in rendering a judgment over a disciplinary action against a person reporting pursuant to this part, shall order, as the court considers appropriate, reinstatement, payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees.

These sections are meant to encourage public education employees to disclose information about persons who were required to furnish certain reports but who willfully or knowingly made or caused to made any false report related to the operation of a local education agency. In other words, sections 49–50–1408 and 49–50–1409 encourage public protection employees to report any violations of sections 49–50–1404 or 49–50–1405 or the waste or mismanagement of public education funds by (1) providing for such reports in section 49–50–1408 and (2) providing a cause of action under section 49–50–1409 for any person disciplined for "reporting under the provisions of this part." When sections 49–50–1. 18 and 49–50–1409 are viewed as provisions drafted to effectuate the purpose in section 49–50–1402(b), it is clear the phrase "reporting under the provisions of this part" in section 49–50–1409 refers to reports made pursuant to 49–50–1408.

When the full statutory scheme is viewed in light of the purposes listed in section 49–50–1402, it is clear that to "report[ ] under the provisions of this part" means to report under the provisions of section 49–50–1408. It is also clear Mosley was not a person reporting under the provisions of 49–50–1408 as that section contemplates reports to "the department of education or committee of the general assembly, or individual official, member or employee of the department or committee." There is no evidence Mosley even made a report to such a person.

There is another reason Mosley's case would not be cognizable under the Act. Mosley's reports were not about a subject the legislature intended for the statute to cover. As already discussed, to "report[ ] under the provisions of this part" as required by section 49–50–1409, the person had to be reporting about a "knowing or willful falsification within the meaning of §§ 49–50–1404 and 49–50–1405, or the waste or mismanagement of public edu-

cation funds." *See Tenn.Code Ann.* § 49–50–1408. Mosley's evidence did not involve reporting about waste or mismanagement of public education funds. Thus, unless her reports concerned an act prohibited by section 49–50–1404 or 49–50–1405, Mosley would not have made a report envisioned and protected by section 49–50–1409. As previously discussed, sections 49–50–1404 and 49–50–1405 prohibit the following:

**49–50–1404 False statements to state or government employees, officials or entities.**

No person or persons required by state law, or rules or regulations promulgated pursuant to such laws, to collect, manage, review and maintain accurate records pertaining to the operation of a local education agency shall knowingly and willfully make or cause to be made any false statement in any detail of statistical or financial data, reports or other information requested or required by a state official, employee, agency, department, board, commission, or other body in the executive branch of state government, or any board, commission, committee, member or employee of the legislative branch of state government.

**49–50–1405 False statements to law enforcement agencies or the judiciary.**

No person or persons required by state law, or rules or regulations promulgated pursuant to such laws, to collect, manage, review and maintain accurate records pertaining to the operation of a local education agency shall knowingly and willfully make or cause to be made any false statement in any detail of statistical or financial data, reports, board minutes or other information requested or required by law enforcement agencies, the judiciary or any member or employee of a law enforcement agency or the judiciary.

As sections 49–50–1404 and 49–50–1405 were enacted to effectuate the purpose listed in section 49–50–1402(a), the "person" in sections 49–50–1404 and 49–50–1405 is same "person" listed in section 49–50–1402(a). Since, however, the "person" referred to in section 49–50–1402(a) is not the same "person" referred to in 49–50–1409,[5] when sections 49–50–1404 and 49–50–1405 refer to "person," these sections are not referring to actions taken by Mosley but by some other person.[6] Thus, to fall within the provisions of section 49–50–1409, Mosley had to have been making a report about a person who was violating section 49–50–1404 or 49–50–1405. However, there was not any evidence presented on this issue. There was no evidence Kelly or Baker made or caused to be made a false statement to the legislative branch, executive branch, judiciary or law enforcement in violation of sections 49–50–1404 and 49–50–1405. In fact, the evidence presented showed reports were ultimately made on both incidents involving students who carried a knife to school. In essence, Mosley's complaint was that she was retaliated against for reporting the two incidents involving students with knives. However, section 49–50–1409 creates a cause of action for persons who suffer a disciplinary action because they reported on another person who was creating or causing to be created false reports, not for the activities Mosley reported.

**7. *Legislative History***

The legislative history confirms the purpose in passing the Act was to prevent false reports and the waste or mismanagement of public education funds. During the floor debates in the Tennessee House of Representatives, State Representative Bragg described the Act as follows:

> Madame Speaker, ladies and gentlemen of the House, this bill would prohibit

---

**5.** The parties are in agreement on this issue.

**6.** Since, in order to have a cause of action, Mosley has to be the "person" referred to in section 49–50–1409 and because the "person"

listed in sections 49–50–1404 and 49–50–1405 is not the same "person" listed in section 49–50–1409, Mosley cannot be the "person" contemplated by sections 49–50–1404 and 49–50–1405.

[local education agency] personnel ... with recordkeeping responsibilities from making false statements of information to state officials in the executive or legislative branches, the judiciary or law enforcement officials. And it would set out some penalty ... but what it amounts to ... is trying to be sure that reports that are filed are accurate and not padded. And I, pending any questions, I'd move for adoption.

(*See* Act's Legislative History, Attached as Appendix A to Court File No. 54, p. 3). Tennessee State Senator Hamilton made a similar description of the bill to the Senate Education Committee. Senator Hamilton's comments were as follows:

The statement of the purpose of the bill is to be the legislative intent to reduce waste and mismanagement of public education funds, to reduce abuses in governmental authority, and to prevent illegal and unethical practices. The bill is designed primarily to keep false statistical information from being submitted to the state Education Department to acquire more funds for some systems or whatever. It's not that there's all that much abuse, but it's something that could happen[ ] and I hope the committee with consider passage of the bill.

(*Id.* at 6).

The discussion between Representative Rhinehart and Representative Bragg during the House floor debates provide further evidence that the purpose of the Act was to prevent the falsification of records and the waste or mismanagement of public education funds. The discussion was as follows:

Rhinehart: Is it your intent, that, say, if [the local education agency personnel] have supposedly an inservice training day in Nashville, they go back and certify to the Board of Education that they have attended inservice training [when] they have not, that they are in violation of this bill, and they will be removed from teaching for five years?

Bragg: Mr. Rhinehart, this bill, all it asks is that they tell the truth.

Rhinehart: Ok, well, it's your intent that that be covered.

Bragg: Yes, sir, that's right.

Rhinehart: There's five discretionary days. If they certified that they've attended inservice training on any one of those fives days, when in fact they've been on vacation, will that be covered under this act?

Bragg: I'm afraid it will, yes, sir.

Rhinehart: Yes, sir, I'm afraid they've been bit by their dog. Thank you.

(*Id.* at 3–4). The discussion continued between other Representatives as follows:

Haun: Mr. Chairman Bragg, does[ ] this include every report from a [local education agency]?

Bragg: What?

Haun: This includes every report that comes from [a local education agency] such as average daily attendance?

Bragg: Yes, sir, this includes those reports because ... in the press it was noted that some of our [local education agencies] were sort of bragging about the fact that they were padding their average daily attendance figures.

. . . .

Givens: Chairman Bragg, are you saying that if you're involved in making educational reports or filing for travel claims or anything such as that nature, that this bill requires you to tell the truth?

Bragg: ... that's exactly what it does, I think. It says, it expresses the legislative intent to reduce waste and mismanagement of education funds.

(*Id.* at 4–5).

### 8. *No Cause of Action*

■ Section 49–50–1409 does not create a cause of action to protect persons like Mosley who report on matters outside the purposes of the Act—namely, on matters other than falsification of records or the waste or mismanagement of public education funds. Another Tennessee Act, the Tennessee Public Protection Act, *see Tenn.*

*Code Ann.* § 50–1–304, was enacted one year after the Tennessee Education Truth in Reporting and Employee Protection Act to provide the type of protection sought by Mosley.[7] Section 49–50–1409, however, simply does not create a cause of action based on the facts of this case.

### 9. *Waiver by Defendants*

Mosley argues the defendants have waived any right to claim the Tennessee Education Truth in Reporting Employee Protection Act does not apply to Mosley because the defendants failed to object to the jury charge. However, "consideration of alleged errors in a jury charge may be appropriate even absent objection where 'necessary to correct a fundamental error or to prevent a miscarriage of justice.'" *Reynolds v. Green,* 184 F.3d 589, 594 (6th Cir.1999). Furthermore, the defendants made a Rule 50 motion on Mosley's claim under the Act at the close of plaintiff's case in chief. Because Mosley's evidence could not establish a violation of section 49–50–1409 in that Mosley's disclosures were not about a person who was making or causing to be made false reports, even though the Defendants did not focus their arguments on the legal deficiency in Mosley's cause of action, since as a matter of law no cause of action was proven, the Court should have granted the defendants' motion when it was first presented. Thus, whether or not the defendants objected to the jury charge that was later given on this claim is not relevant to whether they are entitled to judgment as a matter of law.[8]

### 10. *Verdict Must be Overturned*

For the Court to allow the jury's verdict to stand on this claim, it must be able to conclude, after taking the strongest legitimate view of the evidence in favor of Mosley, allowing her all reasonable inferences, and discarding all countervailing evidence, that a reasonable juror could conclude that section 49–50–1409 had been violated. Only one conclusion can be reached under the facts of this case and the applicable law and that conclusion is that no such violation has been made out.

### 11. *Mosley's Request for New Trial*

■ In an alternative argument, Mosley argued that if the Court finds the defendants are entitled to judgment as a matter of law on her state law claim then the Court should either increase the damages awarded to Mosley under her federal claim by $122,500 to represent the amount the jury awarded in compensatory damages on the state law claim or the Court should grant Mosley a new trial on the issue of damages for the federal claim. Mosley essentially argues the Court instructed the jury it was not to duplicate damages. In this case, the jury found for Mosley on both of her claims, but awarded only back pay on the federal claim and only compensatory damages on the state law claim. Mosley contends it is likely the jury would have awarded the entire damage amount, both the back pay and the compensatory, on the federal claim if that had been the only claim presented to the jury. The Court agrees this could have been a possibility. However, simply taking the jury's award on the state law claim and adding it

7. Unfortunately, at the time Mosley's cause of action arose, the City of Chattanooga was immune from liability under the Tennessee Public Protection Act and the Act did not allow liability against individual supervisors. *See Tenn.Code Ann.* § 50–1–304(d) ("Any employee terminated in violation of subsection (a) shall have a cause of action against the employer for retaliatory discharge and any other damages to which the employee may be entitled"). In 1997, the Tennessee Public Protection Act was amended to waive govern-

mental immunity. *See Seals v. Jefferson City, Tennessee,* 1999 WL 349690 (Tenn.Ct.App. June 2, 1999); *Coffey v. Chattanooga–Hamilton County Hosp. Auth.,* 932 F.Supp. 1023 (E.D. Tenn.1996) (Collier, J., slip op.).

8. Because the jury charge was not presented to the parties until the last day of the trial, after Mosley had already finished her case in chief, Mosley's presentation of her case could not have been influenced by the contents of the jury charge on this claim.

to the amount awarded to Mosley on her federal claim would result in the Court second-guessing the jury's intentions and quite likely an impermissible additur. *See Dimick v. Schiedt,* 293 U.S. 474, 486–87, 55 S.Ct. 296, 79 L.Ed. 603 (1935) (Additur is generally not available in a federal court after a jury trial); *Traylor v. United States,* 396 F.2d 837, 840 n. 4 (6th Cir. 1968) ("Additur is not permitted in the federal court when a jury verdict is found inadequate"). Because, however, there is a strong possibility the jury simply split Mosley's damages between her two claims, the Court finds the interests of justice and fairness require a new trial solely on the issue of whether the jury would have awarded Mosley compensatory damages on her section 1983 claim. *See* Section I(B) of this Memorandum (discusses standard for a motion for a new trial).

For the foregoing reasons, the Court will GRANT the Defendants' Motion for Judgment as a Matter of Law on Mosley's Tennessee Education Truth in Reporting and Employee Protection Act claim, *Tenn. Code Ann.* § 49–50–1409. Since this is the only remaining claim asserted against the City of Chattanooga, the Court will DISMISS the City of Chattanooga from this case. The Court will also GRANT Mosley's request for a new trial on the issue of compensatory damages on her claim under 42 U.S.C. § 1983.

## B. Mosley's Claim under 42 U.S.C. § 1983

Defendants contend they are entitled to judgment as a matter of law[9] or a new trial on Mosley's claim under 42 U.S.C. § 1983 against Kelly and Baker.[10] The jury found for Mosley on this claim and awarded her $22,500 in back pay damages

As discussed in Section I(A) of this Memorandum, motions for judgment as a matter of law are governed by *Fed.*

---

9. The defendants actually requested a judgment notwithstanding the verdict. As explained in Section I(A) of this Memorandum, the Court construes this request as a motion for judgment as a matter of law.

*R.Civ.P.* 50 which, in pertinent part, states:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

*Fed.R.Civ.P.* 50(a)

■ When the Rule 50 motion is denied at trial and the moving party seeks to renew the motion after trial, which the defendants seek to do here, Rule 50(b) applies. That rule states:

If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

---

10. Defendants' request for a remittitur only pertained to the state law claim. Since the Court has concluded the defendants are entitled to judgment as a matter of law on that claim, the issue of remittitur is moot.

(B) order a new trial, or

(C) direct entry of judgment as a matter of law.

Since, however, defendants'. Rule 50 motion challenges a federal claim, rather than a state .claim, the Court must apply the federal standard when reviewing the motion. *K & T Enters.*, 97 F.3d at 175. Under that standard, the Court does not weigh the evidence, evaluate the credibility of the witnesses, or substitute its judgment for that of the jury. *Id.* at 175–76; *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir.1995). The Court must view the evidence in the light most favorable to the party against whom the motion was made and give that party the benefit of all reasonable inferences. *K & T Enters.*, 97 F.3d at 176. The district court's denial of a Rule 50(b) motion is reversed only if reasonable minds could not come to a conclusion other than one in favor of the movant. *Id.*

■ To establish the defendants violated section 1983, Mosley had to prove the following three elements:

(1) Mosley spoke on a matter of public concern;.

(2) Mosley's interest in making the statement outweighed the City of Chattanooga's interest in promoting operational efficiency; and

(3) The speech was a substantial or motivating factor in the defendant's recommendation that Mosley's teaching contract not be renewed and that she not advance to an apprenticeship license.

*Rahn v. Drake Ctr., Inc.*, 31 F.3d 407, 411–12 (6th Cir.1994); *Walters v. City of Norton*, 1999 WL 357803, at *4 (6th Cir. May 28, 1999). The Court also instructed the jury the defendants would not be liable under section 1983 if the jury found the defendants would have taken the same action even if Mosley had not spoken on a matter of public concern. *Board of Comm'rs of Wabaunsee County, Kansas v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996).

The defendants do not assign any error to the jury's finding on the first two elements of Mosley's section 1983 claim. The defendants argue Mosley failed to prove her speech was a substantial or motivating factor in Kelly's or Baker's actions and that the jury should have found the defendants would have made the same decision even in the absence of any speech by Mosley.

■ After applying the federal standard for Rule 50 motions, the Court finds the defendants are not entitled to judgment as a matter of law on Mosley's section 1983 claim. Viewing the evidence in the light most favorable to Mosley and giving Mosley the benefit of all reasonable inferences, the Court cannot say reasonable minds could have only found in favor of the defendants. Mosley presented testimony raising questions concerning whether she should have been rated higher on her summative evaluation. There was also testimony that Kelly and Baker treated Mosley worse following Mosley's reports of the two incidents involving students who carried a knife to school. As the Court instructed the jury, a motive, intent, or design to violate a person's constitutional rights, if it exists, may be inferred from the existence of other facts. *See* 3 Devitt, Blackmar, & Wolff, *Federal Jury Practice and Instructions*, § 103.17 (Supp.1998). As must also be remembered, Mosley did not have to prove her speech was the only reason the defendants took the prohibited actions. Instead, Mosley only had to show her speech was at least a substantial consideration that made the difference in the defendants' actions. The jury heard conflicting proof on this issue and it was entitled to believe one side's version and reject the other. Obviously, the jury found Mosley's speech was at least a substantial consideration in the defendants' actions. The Court cannot say the jury made an unreasonable choice.

The defendants' second argument is that the jury should have found the defendants would have taken the same action even if Mosley had not engaged in protected speech. However, this was an affirmative

defense and the defendants bore the burden of proof on this issue. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Furthermore, Mosley presented testimony showing another probationary employee was treated differently even though she was also frequently late. Based on this, the jury could have found the defendants' actions would have been different if Mosley had not engaged in protected speech. Accordingly, the Court will DENY defendants' motion for judgment as a matter of law on Mosley's section 1983 claim.

■ The defendants also are not entitled to a new trial on Mosley's section 1983 claim. Motions for new trial are governed by *Fed.R.Civ.P.* 59(a) which permits courts to grant a new jury trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Courts have generally interpreted this language to allow a new trial when a jury has reached a "seriously erroneous result" as evidenced by: "(1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio,* 78 F.3d 1041, 1045–46 (6th Cir.1996) (citations omitted).

Under *Fed.R.Civ.P.* 59, "the question of granting or denying of a motion for a new trial following a jury verdict addresses ... the judicial discretion of the trial judge" and is subject to review under the abuse of discretion standard. *Toth v. Yoder Co.,* 749 F.2d 1190, 1197 (6th Cir.1984). *See also United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988); *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir.1970). "Ordinarily, we find no abuse of discretion unless we have a definite and firm conviction that the trial court committed a clear error of judgment." *Anchor v. O'Toole,* 94 F.3d 1014, 1021 (6th Cir.1996) (*quoting Gafford v. General Elec. Co.,* 997 F.2d 150, 171 (6th Cir.1993)).

■ Unlike motions for judgment as a matter of law, "in ruling upon a motion for a new trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.,* 936 F.2d 1474, 1487 (6th Cir.1991) (citation omitted). However, "[c]ourts are not free to set aside jury verdicts 'simply because different inferences and conclusions could have been drawn or because other results are more reasonable.'" *Brooks v. Toyotomi Co.,* 86 F.3d 582, 588 (6th Cir.1996) (*citing J.C. Wyckoff & Assocs.,* 936 F.2d at 1487). In other words, "[a] trial court should deny a motion for new trial 'if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact.'" *Powers v. Bayliner Marine Corp.,* 83 F.3d 789, 796 (6th Cir.1996). The Court's responsibility is "to prevent an injustice." *Davis v. Jellico Comm. Hosp., Inc.,* 912 F.2d 129, 133 (6th Cir. 1990).

■ Mosley and the defendants presented two radically different versions of events. The jury's findings essentially turned upon which side the jury found to be the most credible. Determining credibility and questions of fact are provinces of the jury. "Where the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2nd Cir.1992); *Kukla v. Syfus Leasing Corp.,* 928 F.Supp. 1328, 1334 (S.D.N.Y. 1996); *Van Scoy v. Powermatic,* 810 F.Supp. 131 (M.D.Pa.1992). The evidence submitted by Mosley provides sufficient support in the record for the jury's decision. Though the defendants have a different view of the evidence, the jury's verdict on Mosley's section 1983 claim is one

that could have reasonably been reached. Accordingly, the Court will also DENY the Defendants' Motion for a New Trial on this claim.

### III. *CONCLUSION*

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** the defendants' motion. Defendant's motion will be **GRANTED** to the extent it requests a judgment as a matter of law on Mosley's state law claim under *Tenn.Code Ann.* § 49–50–1409. As this was the only remaining claim asserted against defendant the City of Chattanooga, this will result in the City of Chattanooga being dismissed from this action. Pursuant to a request made by Mosley in her response, the Court will **GRANT** Mosley a new trial solely on the issue of whether the jury would award compensatory damages on Mosley's claim under 42 U.S.C. § 1983. Defendants' motion will be **DENIED** to the extent it requests any other relief. This means the Court will not disturb the jury's verdict awarding Mosley $22,500 in back pay damages on her section 1983 claim. The Court will **VACATE** the final judgment entered by the Clerk of the Court on July 12, 1999. A new judgment will be entered following the retrial of this case on the issue of compensatory damages for the section 1983 claim.