**Andrew DiJOSEPH, et al., Plaintiffs,**

v.

**Carmen VUOTTO, Defendant.**

**Civil Action No. 95–1803.**

United States District Court,
E.D. Pennsylvania.

June 27, 1997.

Armando A. Pandola, Jr., Philadelphia, PA, for Plaintiffs.

Jeffrey M. Scott, Asst. City Solicitor, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

ANITA B. BRODY, District Judge.

Plaintiff Andrew DiJoseph ("DiJoseph") brings this Motion for a New Trial after the jury returned a verdict in favor of defendant Officer Carmen Vuotto ("Vuotto"). DiJoseph alleged violations of the Fourth Amendment for excessive force after suffering injuries when Vuotto shot him on September 22, 1993, during a confrontation between DiJoseph and police officers from the City of Philadelphia. DiJoseph enumerates a myriad of reasons for a new trial. Among them, DiJoseph claims that (1) admission of DiJoseph's state court guilty plea of aggravated assault involving the same incidents as those at trial, and (2) admission of evidence of drug possession and paraphernalia caused substantial injustice to DiJoseph's case thereby warranting a new trial. For the reasons

outlined below, I find none of the plaintiffs' arguments persuasive. Accordingly, I will deny plaintiffs' Motion for a New Trial.

The facts of this case are clearly set forth in *DiJoseph v. City of Philadelphia,* 947 F.Supp. 834 (E.D.Pa.1996) (*"DiJoseph I"*) and *DiJoseph v. City of Philadelphia,* 953 F.Supp. 602 (E.D.Pa.1997) (*"DiJoseph II"*).

## I. Standards of Review

█ Rule 59 of the Federal Rules of Civil Procedure provides in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed.R.Civ.P. 59(a). A new trial is generally warranted only when the district court is persuaded that there has been a miscarriage of justice. *Van Scoy v. Powermatic,* 810 F.Supp. 131, 134 (M.D.Pa.1992); *see generally* 11 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure (hereinafter "Wright & Miller") § 2803 (1995) ("Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done . . .") Such might occur if a verdict is contrary to the great weight of the evidence or because of errors made at trial, such as the admission of improper evidence or errors in the jury charge. *Farra v. Stanley–Bostitch, Inc.,* 838 F.Supp. 1021 (E.D.Pa.1993); *Sandrow v. United States,* 832 F.Supp. 918 (E.D.Pa. 1993); 11 Wright & Miller § 2805. At the same time, however, courts must "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Fed.R.Civ.P. 61 (harmless error).

## II. Discussion

DiJoseph outlines dozens of reasons for why I should grant a new trial. Rule 61, however, instructs me to disregard those possible errors or defects that would not affect DiJoseph's substantial rights. Plaintiffs' contentions of arguable merit include (1) DiJoseph's state court guilty plea of aggra-

vated assault should not have been admitted and the attack on the validity of DiJoseph's criminal conviction should not have been precluded; and (2) evidence of DiJoseph's possible drug use or possession or drug paraphernalia found in his home after the shooting should not have been admitted at trial. I will deal with each claim in turn.

### A. Admissibility of DiJoseph's State Court Guilty Plea of Aggravated Assault

On November 4, 1994, DiJoseph pled guilty to aggravated assault and possession of a weapon of crime in state court for pointing a gun at Officer Vuotto during the confrontation of September 22, 1993. The facts to which DiJoseph pled guilty read as follows:

> On September 22, 1993, at approximately 1:18 p.m., at 6524 Dorel Street, City and County of Philadelphia, [Andrew DiJoseph] while in possession of a fully loaded .38 pistol, did point it at Police Officer Carmen Vuotto, badge number 5393, of the StakeOut Unit in an attempt to cause serious bodily harm. The police officer in fear of his life shot and injured the defendant.

Tr. DiJoseph Guilty Plea and Sentencing, Nov. 4, 1994, at 11–12.

DiJoseph filed a Motion in Limine seeking to exclude evidence that he pled guilty to aggravated assault in state court. Because I held in *DiJoseph I* that DiJoseph's state court guilty plea did not collaterally estop the issue of whether Officer Vuotto's use of force was objectively reasonable under the Fourth Amendment, DiJoseph contended that the guilty plea was irrelevant at trial. In addition, DiJoseph argued that submission of the guilty plea was inadmissible under FRE 403 because it would unfairly prejudice the jury against his case or would otherwise confuse the issues of how a man who pleaded guilty to aggravated assault against an officer could later file a civil rights law suit against that same officer. I denied DiJoseph's motion. At the same time, I granted officer Vuotto's Motion in Limine to preclude DiJoseph from offering evidence to contradict or attack the guilty plea. Specifically, I granted Vuotto's motion to exclude evidence that (1) DiJoseph

did not point his fully loaded gun at Vuotto, (2) DiJoseph did not commit the crimes of aggravated assault and possession of an instrument of crime, and (3) DiJoseph pleaded guilty to avoid a prison sentence. Contrary to what DiJoseph now asserts, I did not permit the defense to introduce into evidence the last sentence of the factual basis underlying the guilty plea stating, "The police officer in fear of his life shot and injured the defendant." *See* Order, Apr. 4, 1997, at ¶ 1(a).

DiJoseph contends that the Court erred by permitting the defendants to introduce the guilty plea. Alternatively, DiJoseph asserts that he should have been able to explain the circumstances surrounding the guilty plea as documented by the guilty plea colloquy indicating that he pled guilty to avoid prison, he was medically unfit to serve a jail sentence at that time, and he never intended to harm anyone.

■ As I held in *DiJoseph I,* the preclusive effect of DiJoseph's state court guilty plea is determined by Pennsylvania law. *DiJoseph I,* 947 F.Supp. at 840. Under Pennsylvania law, a conviction from a guilty plea is equivalent to a conviction from a trial-by-jury. *Commonwealth v. Mitchell,* 517 Pa. 203, 535 A.2d 581, 585 (1987). Operative facts necessary for criminal convictions are admissible as conclusive facts in civil suits arising from the same events and circumstances. *Folino v. Young,* 523 Pa. 532, 568 A.2d 171, 172 (1990); *Mitchell,* 535 A.2d at 585 ("criminal conviction[s] may be used to establish the operative facts in a subsequent civil case based on those same facts.").

■ DiJoseph pled guilty to aggravated assault in state court. Under Pennsylvania law, a person is guilty of aggravated assault if he or she

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting an extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly, or recklessly causes serious

bodily injury to a ... police officer ... in the performance of a duty ...;

(3) attempts to cause or intentionally or knowingly causes bodily injury to a ... police officer ... in the performance of a duty ...;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S.A. § 2702(a) (1996). Although DiJoseph's guilty plea does not specifically reference to which subsection of aggravated assault he pled guilty, common to each of the subsection is an "attempt[ ] to cause ... bodily injury to [another]." Therefore, the operative facts underlying DiJoseph's aggravated assault conviction are those facts which at a minimum indicate that Dijoseph attempted to cause bodily injury to Vuotto. The factual basis to which DiJoseph pled guilty states that DiJoseph's gun was fully loaded and that he pointed his fully loaded gun at Carmen Vuotto. These facts, then, are the operative facts—the necessary facts—upon which DiJoseph's guilty plea rests and which I must accept as conclusively established for purposes of this present law suit. As operative facts of criminal convictions arising from the same events and circumstances are admissible in a subsequent civil trial, my ruling to admit DiJoseph's guilty plea (minus the last sentence) was proper.[1]

■ Also, my ruling granting Vuotto's motion to exclude any evidence that is deemed to attack the validity of DiJoseph's criminal conviction was proper. If the operative facts of the aggravated assault conviction are conclusively established as a matter of law, then DiJoseph should not have been given the opportunity to challenge the bases of those facts.

A guilty plea is an acknowledgement by a defendant that he participated in the commission of certain acts with a criminal intent. He acknowledges the existence of the facts and the intent ... [During the guilty plea colloquy, the] defendant is before the court to acknowledge facts that he is instructed constitute a crime ... he will

---

1.  DiJoseph's guilty plea was also properly admitted as an admission of a party opponent under

FRE 801(d)(2) and, for impeachment purposes, as a prior inconsistent statement.

accept their legal meaning and their legal consequence.

*Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303, 1307–08 (1984). Even if DiJoseph negotiated his plea to avoid a prison term, as he contends, he is nevertheless bound by the legal consequences of that guilty plea. Therefore, DiJoseph was properly precluded from introducing evidence that would attack, justify, explain, or rationalize his guilty plea to the jury.

DiJoseph asserts that *Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), stands for the proposition that "there can never be a Civil Rights Claim which is affected, in any manner, by a previous guilty conviction or guilty plea." Pls.' Reply to Def.'s Answer to Pls.' Mot. for New Trial at 1. Plaintiffs interpret *Haring* too broadly. In *Haring,* the Supreme Court held that Virginia law did not preclude a subsequent § 1983 claim for an alleged constitutional violation that had not been addressed by a previous state court criminal conviction procured by a guilty plea. In *Haring,* the plaintiff claimed that the police had conducted an unlawful search of his apartment in violation of the Fourth Amendment. Because he had already pled guilty to manufacturing a controlled substance, the plaintiff never had an opportunity to contest or litigate the validity of the search. Furthermore, as there was no motion to suppress evidence on Fourth Amendment grounds raised during the criminal proceedings, this particular issue had never been addressed. As a result, the Supreme Court held that the plaintiff could proceed with his civil rights suit.

■ DiJoseph's case survived summary judgment on the rationale of *Haring.* The issues determined by the state court guilty plea—aggravated assault and possession of an instrument of crime—were not the issues addressed in DiJoseph's subsequent § 1983 case, namely whether Vuotto used excessive force in shooting DiJoseph. As a result, collateral estoppel did not bar DiJoseph's civil suit. There is no authority from *Haring,* however, questioning the conclusiveness of the operative facts that were determined

by the state court guilty plea, as DiJoseph suggests. Accordingly, I will deny DiJoseph's Motion for a New Trial on this basis.

## B. Evidence of Drug Use, Possession, and Paraphernalia

Following the shooting of DiJoseph, the police conducted a search of DiJoseph's house. Among other things, the police found cocaine vials and lighters in DiJoseph's desk. DiJoseph filed a Motion in Limine to exclude any evidence involving drug use, possession, or paraphernalia which was found as a result of the police's search of DiJoseph's home following the shooting. DiJoseph asserted that evidence of this nature was irrelevant and highly prejudicial to his case and should therefore be excluded. I denied DiJoseph's motion without prejudice to revisit the issue at trial, if necessary.

At trial, I permitted defense counsel to impeach DiJoseph using evidence of drugs and drug paraphernalia found in DiJoseph's home during the search following the shooting.[2] DiJoseph contends that I did so in error as there was no foundation for the defense to impeach on such grounds. In addition, DiJoseph asserts that the defense stated before trial that the evidence concerning drugs would only be used if DiJoseph had difficulty remembering events that took place. DiJoseph claims that he did not have difficulty recalling the events surrounding the incidents giving rise to this litigation, while the defense used evidence of the drugs nonetheless. DiJoseph also maintains that he was disadvantaged because he did not inquire on *voir dire* about the potential jurors' views on drugs and because he objected to the part of a videotaped deposition in which a doctor testified that there were no toxicology records to suggest that DiJoseph had drugs in his bloodstream at the time of the shooting. Pls.' Mot. for New Trial at 26. Had DiJoseph known that evidence concerning his possible drug use would have been admitted, DiJoseph would not have made

---

**2.** Contrary to what DiJoseph claims, the photographs of the drugs and drug paraphernalia were not admitted into evidence. *See* Pls.' Mot. for New Trial at 24.

such an objection to the videotaped deposition.

Notwithstanding DiJoseph's arguments, I properly permitted the defense to question him concerning the issue of drugs and drug paraphernalia on cross-examination. Drug use goes directly to the issue of DiJoseph's credibility and perception of the incidents as they occurred on the date of the shooting. *United States v. Ramirez*, 871 F.2d 582, 584 (6th Cir.1989) (drug use or addiction is appropriate subject for impeachment on cross-examination); *Jarrett v. United States*, 822 F.2d 1438, 1446 (7th Cir.1987) ("A witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial."); *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir.1987) (evidence of drug use admissible to impeach if memory or mental capacity of witness is legitimately at issue); *United States v. Hickey*, 596 F.2d 1082, 1090 (1st Cir.1979) (witness can be asked about drug use that may have affected his or her perception of events as long as the drug use occurred within a reasonable time of the events surrounding the trial). The defense certainly had a proper basis for asking such questions as DiJoseph, himself, admitted that he had experimented with cocaine during the week preceding the shooting during his state court guilty plea colloquy,[3] the police had found drugs in his desk immediately following the shooting, and DiJoseph testified on direct-examination that he heard noises inside his home and thought that a burglar was hiding inside of a hope chest. *See* Trial Tr., Apr. 9, 1997, at 13, 69 (testimony of Andrew DiJoseph). These facts laid a foundation for the defense that DiJoseph's perception of the events surrounding the events that took place on September 22, 1993, might not be reliable. As DiJoseph's perception of events was critical for the jury to determine whether they believed DiJoseph that he never pointed the gun at Officer Vuotto during the confrontation, the defense was properly permitted to impeach DiJoseph with evidence of drug use, possession, and paraphernalia on cross-examination.

Before trial, I denied without prejudice the plaintiffs' Motion in Limine concerning evidence of the drugs. I did not categorically grant plaintiffs' motion because it was unclear for what purpose the defense might attempt to introduce such evidence. While evidence of drug use, possession, and paraphernalia may not be admissible for some purposes, such as impeaching the general character of a witness or as substantive evidence in this case, it is admissible for other purposes, namely to impeach DiJoseph on his perception of events. Although DiJoseph argues that this unfairly prejudiced his trial preparation and strategy, the evidence was admissible for the purposes for which the defense introduced it. Thus, I will deny DiJoseph's Motion for a New Trial on this basis as well.

---

3. The guilty plea colloquy reads:
THE COURT: How did the crack vials get in your home?
THE DEFENDANT: After I was carjacked I was having emotional problems dealing with a carjacking and I experimented for a week.

THE COURT: That is the week immediately preceding this case?
THE DEFENDANT: Yes, Sir.
Tr. Andrew DiJoseph Guilty Plea and Sentencing, Nov. 4, 1994, at 20.