Luis SANABRIA, Plaintiff,

v.

Officer Steven MARTINS, Defendant.

Civil No. 3:06cv647 (JBA).

United States District Court,
D. Connecticut.

March 26, 2008.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND OUTSTANDING DISCOVERY MOTIONS

JANET BOND ARTERTON, District Judge.

Plaintiff Luis Sanabria brought this suit against Defendant Steven Martins, a police officer for the City of Ansonia, alleging that Martins used excessive force in the course of arresting him, thereby violating his constitutional rights and also constituting both assault and battery and intentional infliction of emotional distress.[1] Martins now moves for summary judgment, arguing that: (1) Sanabria's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994); (2) Martins is entitled to qualified immunity; and (3) Sanabria's testimony is sufficiently unreliable that his claims should be dismissed. For the reasons that follow, Defendant's motion is denied. As explained below, the Court also grants two outstanding discovery motions relating to the March 26, 2007 Qualified Protective Order.

### I. Factual Background

On August 29, 2005, Martins responded to a report of an assault at the Laticrete Industries building in Bethany, Connecticut. (Def.'s Local R. 56(a)1 Stmt. ¶ 4.) Martins, who was specifically requested because he was a certified canine handler, arrived at the scene along with several members of the state police. (*Id.* ¶¶ 2, 15.) Understanding that the suspect had brandished a box cutter and then fled from the building into the surrounding wooded area, Martins fitted his dog, Thor, with a tracking harness and pursued the suspect.

E. Gregory Cerritelli, Knight, Conway & Cerritelli, New Haven, CT, for Plaintiff.

Jeffrey E. Potter, John J. Radshaw, III, Howd & Ludorf, LLC, Hartford, CT, for Defendant.

[1] Plaintiff voluntarily dismissed with prejudice his claims against the City of Ansonia on February 21, 2007 [Doc. # 30].

(*Id.* ¶¶ 18–19.) Thor found the suspect, Sanabria, near the building and engaged him, biting him on the right arm, and Sanabria was eventually placed under arrest. (*Id.* ¶¶ 30–37, 47, 60–65.) Plaintiff was hospitalized as a result of his arm injury and subsequently charged with three offenses; he later pleaded guilty to one count of interfering with a police officer in violation of Connecticut General Statutes § 53a–167a. (*Id.* ¶¶ 40–41, 75.) During the plea hearing in which Sanabria acknowledged his guilt, the prosecutor provided the following factual basis for the plea:

> Police were called to this gentleman's place of business in Bethany. It was a fight between himself and Mr. Torres. When they attempted [to] apprehend both of them, Mr. Torres was, apparently, compliant. Mr. Sanabria ended up taking off and they ended up chasing him through the woods. There was a dog with them. The dog ended up finding Mr. Sanabria.

(Plea Hr'g Tr., Sept. 12, 2005, 4:6–15, Def.'s Ex. I.) Sanabria confirmed the accuracy of this account. (*Id.* 5:27–6:3.)

The Plaintiff subsequently filed this civil action, alleging that Martins used unconstitutionally excessive force in the course of bringing him into custody. According to Sanabria, the critical facts of the encounter between him, the Defendant, and Thor are as follows:

> [Sanabria] has testified under oath that he complied with the defendant's command to show his hands. The plaintiff further testified that despite his immediate compliance, the defendant officer gave a command to the canine, which resulted in the attack which is the subject of this lawsuit. The plaintiff was not actively resisting arrest, nor was he otherwise not compliant with the defendant's commands. A jury may indeed find that under the context of these

facts, the defendant's actions were indeed excessive.

(Pl.'s Opp'n at 6; *see also* Am. Compl. ¶¶ 6–11.)

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

Summary judgment is appropriate where the record after discovery "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "material" if it "might affect the outcome of the suit under the governing law," and is "genuine" if it could lead "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant "need not prove a negative," but "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Entm't, Inc.,* 260 F.3d 100, 111 (2d Cir.2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. But if the record as a whole, viewed in the light most favorable to the non-moving party, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment should follow. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quotation marks omitted).

## B. Effect of Sanabria's Guilty Plea

Martins contends that Sanabria's claims are barred because they necessarily conflict with his conviction for interfering with a police officer. Section 53a–167a, the statute defining that offense, provides that "[a] person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Conn. Gen.Stat. § 53a–167a(a). This offense thus has three elements: (1) interference with an officer, (2) with intent to so interfere, (3) while the officer is performing his or her duties. *State v. Williams,* 205 Conn. 456, 534 A.2d 230, 238 (1987). The Connecticut Supreme Court has interpreted this language as encompassing "conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties," which includes "acts of verbal resistance as well as acts of physical resistance." *Id.; State v. Aloi,* 280 Conn. 824, 911 A.2d 1086, 1094–95 (2007) (reading § 53a–167a as "establish[ing] a broad proscription against conduct that intrudes upon the ability of a police officer to perform his or her duties"). A police officer is performing his or her duties as contemplated by the statute "[i]f he is acting under a good faith belief that he is carrying out that duty [and] if his actions are reasonably designed to that end." *State v. Davis,* 261 Conn. 553, 804 A.2d 781, 789–90 (2002).

■ In *Heck v. Humphrey,* the Supreme Court explained that "civil tort actions," such as those brought pursuant to § 1983, "are not appropriate vehicles for challenging the validity of outstanding criminal judgments," and cannot proceed if they would "necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." 512 U.S. at 486, 114 S.Ct. 2364. The petitioner in *Heck* was a prisoner convicted of voluntary manslaughter who brought a § 1983 action against state officials challenging various aspects of his prosecution and conviction. *Id.* at 478–79, 114 S.Ct. 2364. Affirming the dismissal of these claims, the Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 486–87, 114 S.Ct. 2364 (footnote omitted). Under this "favorable termination" rule, a § 1983 action seeking monetary damages is not cognizable where "the basis for the damages claim necessarily demonstrates the invalidity of the conviction," thus in reality "attacking the fact or length of confinement." *Id.* at 481–42, 114 S.Ct. 2364 (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *Peralta v. Vasquez,* 467 F.3d 98, 102 (2d Cir.2006).

■ Determining whether awarding Sanabria the relief he seeks in this case

"would necessarily imply the invalidity of [his] conviction" is a fact-specific inquiry. *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir.1999). Plaintiff argues that "a claim for excessive force may lack the requisite relationship to the conviction necessary for dismissal under Heck." (Pl.'s Opp'n at 8.) However, there is a more compelling reason that Defendant's *Heck* argument falls short. In *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir.1999), the Second Circuit reasoned that, where a § 1983 plaintiff was never incarcerated for a prior offense and thus had no opportunity to raise a constitutional challenge via habeas corpus, *Heck* does not apply. Here, Sanabria pleaded guilty to violating § 53a–167(a) and was sentenced to pay a $250 fine without any term of incarceration. (Plea Hr'g Tr., Sept. 12, 2005, 7:24–27, Def.'s Ex. I.) Like the plaintiff in *Leather*, Sanabria had no habeas corpus remedy, and so *Heck* is no bar to his § 1983 action. Under such circumstances, the *Leather* court concluded, a plaintiff should "be permitted to pursue his § 1983 claim in the district court unless principles of res judicata or collateral estoppel preclude his suit." *Id.*

The preclusive effect, if any, of a prior state criminal conviction, is determined by how the courts of that state would treat the judgment. 28 U.S.C. § 1738; *Leather*, 180 F.3d at 424. Under Connecticut law, collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action," such as a criminal proceeding. *Aetna Cas. & Sur. So. v. Jones*, 220 Conn. 285, 596 A.2d 414, 421 (1991). In *Jones*, the Connecticut high court followed the conclusion of the Appellate Court in *Griffin v. Parker*, 22 Conn. App. 610, 579 A.2d 532, 537–38 (1990), *rev'd on other grounds*, 219 Conn. 363, 593 A.2d 124 (1991), and abandoned the "mutuality of parties" rule in applying collateral estoppel. *Jones*, 596 A.2d at 423–24. In

*Griffin*, the plaintiff sought monetary damages for injuries caused after being shot by the defendant, conduct for which the defendant had already been convicted of assault in the first degree. 579 A.2d at 533. Reviewing the trial court's grant of summary judgment for the plaintiff on the basis of this prior conviction, the Appellate Court reasoned:

> A judgment of conviction in a criminal case following a plea of guilty is admissible as an admission in a subsequent civil case. It is difficult to discern any meaningful difference between the use in a subsequent civil case of a plea of guilty in a prior criminal case and the same use of a conviction of guilty, after a trial, in a criminal case....

> We conclude that a prior conviction estops a party in a later civil suit from contesting facts necessarily established in the criminal proceeding. Symmetry of the parties in the two cases is not controlling. Fairness is. If the defendant did not appeal from his criminal conviction, it would ordinarily not be unfair to prevent him from relitigating, in a subsequent civil action, the precise issue determined by a higher standard of proof in the prior criminal action.

*Id.* at 537–38 (quotation marks, citations, and alterations omitted). Later, the Connecticut Supreme Court affirmed the relationship of a guilty plea and estoppel in the context of an arbitration award, and determined that if the employee's

> conviction for embezzlement of his employer's funds had followed either a guilty plea or a trial, the employer would have been justified in imposing appropriate discipline, including termination, and an arbitral award requiring his reinstatement to employment would have violated clear public policy. In either instance, the record would be sufficient to establish that the employee had in

fact stolen from his employer. The guilty plea would constitute an admission of guilty; and the conviction after trial would be sufficient to establish the fact of the theft, under established principles of issue preclusion. [Citing *Jones.*]

*Town of Groton v. United Steelworkers of Am.*, 254 Conn. 35, 757 A.2d 501, 509 (2000) (citations omitted).

However, Connecticut law is not perfectly clear on the application of preclusion principles to a prior guilty plea. *Griffin* characterized the later effect of a guilty plea both in terms of estoppel and of evidentiary admissions; one pre-*Jones* case relied on by the *Griffin* court spoke only of the latter. *Griffin*, 579 A.2d at 537; *see State v. Ramsundar*, 204 Conn. 4, 526 A.2d 1311, 1317 (1987) ("Evidence of the defendant's guilty plea to a charge of harassment and his subsequent admission to violation of the conditions of his probation were, under the circumstances, admissions of prior misconduct which were properly admitted into evidence.") This conception mirrors later statements by the state high court, dealing with the relationship between guilty pleas and nolo contendere pleas, that "[a] nolo contendere plea has the same effect as a guilty plea, but a nolo contendere plea cannot be used against the defendant as an admission in a subsequent criminal or civil case." *State v. Commins*, 276 Conn. 503, 886 A.2d 824, 830 (2005). Further complicating matters is the fact that the Restatement (Second) of Judgments—to which Connecticut courts look for guidance, *Jones*, 596 A.2d at 423—disfavors the application of issue preclusion to criminal convictions based on guilty pleas:

> The rule of this Section presupposes that the issue in question was actually litigated in the criminal prosecution. See § 27, Comment *e*. Accordingly, [preclusion] does not apply where the criminal judgment was based on a plea of nolo contendere or a plea of guilty.... A defendant who pleads guilty may be held to be estopped in subsequent civil litigation from contesting facts representing the elements of the offense. However, under the terms of this Restatement such an estoppel is not a matter of issue preclusion, because the issue has not actually been litigated, but is a matter of the law of evidence beyond the scope of this Restatement.

Restatement (Second) of Judgments, § 85 cmt. b (1982).

■ If Connecticut law regards the subsequent effect of a guilty plea as a matter of evidentiary admissions and not preclusion, then the Court must redirect its attention to federal law. Here, the authorities agree that a guilty plea is admissible under Federal Rule of Evidence 801(d)(2) as a non-hearsay party admission. 5 *Weinstein's Federal Evidence* § 803.24[1]-[2] (2d ed.2007); 2 *McCormick on Evidence* § 257 (6th ed.1999); *see, e.g., DiJoseph v. Vuotto*, 968 F.Supp. 244, 247 (E.D.Pa.1997) (finding the operative facts of plaintiff's criminal convictions admissible as Rule 801(d)(2) admissions, if not giving rise to issue preclusion directly); *cf. United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978) ("It is well-settled that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.").

■ Whether the question of how to view Sanabria's guilty plea is approached through the lens of preclusion or evidence law, though, the effect would be the same given the present procedural posture. Even if not estopped from denying the facts underlying his plea and conviction, Sanabria cannot create a disputed issue of material fact relevant to the summary judgment analysis simply by contesting

the basis for his guilty plea. *See Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) (recognizing the well-settled rule that "a party may not ... create a material issue of fact" and defeat summary judgment through self-serving assertions which contradict prior sworn testimony). Sanabria pleaded guilty to interfering with a police officer in violation of Connecticut General Statutes § 53a–167a, a class A misdemeanor offense, thereby conceding the factual basis for the plea and admitting the facts necessary to establish the three elements of that offense: (1) interference with an officer, (2) with intent to so interfere, (3) while the officer is performing his or her duties. His bare assertions in opposition that he offered no resistance, therefore, provide no demonstration of the existence of a genuine issue of material fact on the subject which underlay his conviction.

■ The analysis does not end here, however, because Plaintiff's § 1983 allegations are not wholly congruent with the facts determined by his guilty plea. By analogy to the *Heck* rule, an excessive-force claim may lie under § 1983 so long as the plaintiff can prevail without "negat[ing]" an element of the offense." *Heck*, 512 U.S. at 487 n. 6, 114 S.Ct. 2364; *see also Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir.2000) (precluding plaintiff's claim of excessive force if "facts actually determined in his criminal convictions that were necessary to the judgment of conviction are incompatible with" the subsequent civil allegations); *Jackson v. Suffolk County Homicide Bureau*, 135 F.3d 254, 257 (2d Cir.1998) (finding an excessive-force claim under § 1983 not barred as "lack[ing] the requisite relationship to the conviction"). Such reasoning holds true here as well, for Sanabria could prove that Martins and Thor used excessive force in arresting him after he had completed the offense of interfering with an officer. Sanabria plead-ed guilty to interfering with Martins on the night in question, necessarily admitting that he had "obstruct[ed], resist[ed], hinder[ed,] or endanger[ed]" Martins in performing his duties. Conn. Gen.Stat. § 53a–167a(a). Sanabria cannot now proceed with a § 1983 action premised on his contention that he did nothing wrong and that Martins acted without provocation. But to the extent Plaintiff is seeking damages based on the quantum of force Martins used after Plaintiff completed the offense of interfering with an officer (or perhaps in response thereto), there remains a genuine issue of material fact for trial.

## C. Qualified Immunity

Alternatively, Martins seeks summary judgment on the ground of qualified immunity. Plaintiff counters that there are disputed issues of material fact which preclude the Court from finding Martins immune at this stage in the proceedings.

■ To assess whether Martins is entitled to qualified immunity—which is a shield from suit, not just a defense—the Court must follow the sequential framework from *Saucier v. Katz*, 533 U.S. 194, 200–206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "The threshold question is whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." *Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir.2003). Sanabria alleges that Martins used excessive force in the course of an arrest, which is a claim that "should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). If the facts show that the force used was unreasonable under the circumstances and thus amounted to a constitutional violation, then the Court must determine "whether it would be clear to a reasonable officer that

his conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202, 121 S.Ct. 2151. Martins would therefore be qualifiedly immune and entitled to summary judgment "if either (1) his actions did not violate clearly established law or (2) it was objectively reasonable for him to believe that his actions did not violated clearly established law." *Iqbal v. Hasty,* 490 F.3d 143, 152 (2d Cir.2007). But summary judgment on qualified immunity grounds is not appropriate if there are material factual issues still in dispute. *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir.1998).

█ Responding to Sanabria's contention that the factual posture precludes summary judgment, Martins emphasizes that his qualified-immunity argument depends on whether *Heck's* "favorable termination" rule applies. In his reply brief, Defendant clarifies the basis on which he is seeking qualified immunity:

The plaintiff first attempts to oppose summary judgment by arguing the existence of an issue of material fact with respect to the defendant's qualified immunity affirmative defense. In support thereof, the plaintiff cites to his own deposition testimony and compares/contrasts this testimony with the sworn testimony offered by Officer Martins and Trooper Muzzulin. The plaintiff's opposition argument, however, misinterprets the basis of the defendant's qualified immunity argument. The defendant's argument set forth within his memorandum avers (1) the *Heck* argument prohibits the admission of the plaintiff's testimony as it is inconsistent with the factual and legal basis for his criminal conviction for resisting arrest, and (2) the sole remaining admissible testimony and tangible evidence submitted by the defendant supports the finding of qualified immunity, as a matter of well-established law.

(Def.'s Reply at 1–2 (citations and footnote omitted).) Because Martins believes that *Heck* bars the bulk of Plaintiff's own testimony, Martins contends that the remaining evidence "support[s] a finding that the plaintiff was known to be possibly armed, dangerous[,] and concealed in the woods/brush in the darkness of night," which necessarily "entitle[s] [Martins] to qualified immunity based on the consistent, *admissible* evidence in this case." (*Id.*) However, even excluding those parts of Plaintiff's testimony that conflict with his guilty plea and conviction, there is considerable disagreement over what he did while being engaged by Thor and dragged out of the woods to be arrested. These factual circumstances are directly relevant to whether the use of force was reasonable and whether Martins's conduct was clearly unlawful, and are therefore both genuine and material. In a similar context, the Second Circuit reasoned: "The mere fact that [plaintiff] was conclusively shown by his prior convictions to have resisted arrest and harassed [the police officer] could not foreclose the possibility that the force used by [the officer] in response to [plaintiff's] misconduct was excessive." *Sullivan,* 225 F.3d at 165. With the present disputed record in this case, summary judgment on qualified immunity grounds is inappropriate.

Such factual disputes are not necessarily dispositive if the movant can show that it is still entitled to judgment based on the non-moving party's version of the facts. *Cowan,* 352 F.3d at 761. But Martins offers little more than conclusory assertions on this score, contending that he is entitled to judgment because his "alleged conduct [is] the opposite of intentional." (Def.'s Mem. in Supp. at 22.) There is no question that Plaintiff's claims are based on Defendant's deliberate use of force while apprehending a suspect, which is enough to implicate the Fourth Amendment's pro-

tection against unreasonable seizures; this remains true even if there is evidence showing that not everything Thor did during the encounter with Sanabria had been intended by Martins. *See Graham*, 490 U.S. at 395–96, 109 S.Ct. 1865. Whether Thor subdued Sanabria in a manner that Martins did not anticipate—for example, by biting Sanabria with more force than strictly necessary after Martins decided to utilize Thor—may certainly prove relevant to the qualified-immunity inquiry, but this would not be a sufficient basis on which to conclude that there was no constitutional violation in the first place. As the Supreme Court explained in *Graham*, "the 'reasonableness' inquiry in an excessive-force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. Thus, in this case, a trial is necessary to determine the objective circumstances in which Martins utilized Thor and the means by which he used him to subdue Sanabria and bring him into custody.

For these reasons, summary judgment on the basis of qualified immunity is denied.

### D. Sanabria's Contradictory Testimony

Defendant further argues he is entitled to summary judgment on the ground that Plaintiff's testimony is so inconsistent and unreliable that no jury would rely on it and find in his favor. Martins relies on *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 477–78 (S.D.N.Y.2003), for the principle that summary judgment cannot be defeated by "implausible testimony" that "no reasonable person could believe" and which is so "incredulous" that to allow its introduction "at trial would be a terrible waste of judicial resources and a fraud on the court." In the record before the Court, Sanabria's

testimony is indeed contradictory in part and inconsistent with the accounts of other witnesses, for example with respect to whether Sanabria complied with Martins's commands, whether Sanabria prompted Thor to bite him, and whether the encounter took place in the woods. Even with these flaws, however, Plaintiff's testimony does not come close to the "incredulous" account rejected by the court in *Jeffreys*, a case in which the plaintiff alleged excessive force but failed to "proffer [any] competent evidence that he was attacked by the officers." *Id.* at 475. In this case, there has been no showing that the flaws are so egregious that letting a jury hear Plaintiff's testimony would amount to judicial fraud. Notwithstanding the contradictions, on the narrowed claim that Sanabria will be able to pursue at trial, there is still evidence on which a jury could conclude that the quantum of force employed by Martins in apprehending Sanabria-after Sanabria had committed the offense of interfering with an officer-was unconstitutionally excessive under the circumstances.

Therefore, Defendant's Motion for Summary Judgment is denied.

### III. Discovery Motions

Two outstanding discovery motions are also before the Court. On March 26, 2007, the Court issued a Qualified Protective Order [Doc. # 34] pursuant to Federal Rule of Civil Procedure 45 and 45 C.F.R. § 164–512(e) instructing, among other things, the Connecticut Mental Health Center of the Connecticut Department of Mental Health and Addiction Services ("CMHC") to disclose Plaintiff's "protected health information" for purposes of and during the litigation. The CMHC has moved to vacate [Doc. # 46] the Qualified Protective Order, and Defendant Martins has moved to compel "the Department of Mental Health and Addiction Services,

Connecticut Mental Health Center, and Yale Psychiatric to produce, for inspection and/or copying, the plaintiff, Luis Sanabria's (DOB [1972] ), mental health records in compliance with a subpoena *duces tecum* served upon this entity." (Mot. Compel [Doc. # 50] at 1.)

In March 2007, Defendant served the following identical subpoena on CMHC, Latino Mental Health, and the Yale Department of Psychiatry, seeking:

1. Your entire file including, but not limited to, all psychiatric, psychological, mental health disorder, medical documents and records relating to the examination, diagnosis, treatment, care and prognosis of LUIS SANABRIA ... from August 2000 to present.

2. All medical documents and records relating to the examination, diagnosis, treatment, care and prognosis of LUIS SANABRIA ... from August 2000 to present.

(Schedule A, Subpoenas, Def.'s Mot. Compel, Ex. D [Doc. # 51–5].) All three returns of service state, "I served the within Subpoena In A Civil Case; Notice of HIPAA Compliance; Motion for Qualified Protective Order upon _____." (Return of Service, *id.*)

CMHC does not dispute that Defendant has complied with federal regulations, specifically 45 C.F.R. § 164–512(e), but argues that the subpoena's language (1) conflicts with Connecticut law, (2) does not respect the common law psychotherapist-patient privilege, and (3) violates federal laws governing access to records related to substance abuse treatment, 42 U.S.C. § 290dd–2. In *Jaffee v. Redmond*, 518 U.S. 1, 16, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. at 16, 116 S.Ct. 1923. The Court specifically rejected any "balancing component of the privilege," observing that "[m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege." *Id.* at 17, 116 S.Ct. 1923.

However, in *Jaffee* the Court did not conclude that the psychiatric/psychotherapeutic privilege can never be waived. Waiver of the privilege is effected not only by written consent but also through an implied waiver, such as when a plaintiff-patient "plac[es] his or her medical condition at issue" by seeking emotional distress damages. *Schoffstall v. Henderson,* 223 F.3d 818, 822 (8th Cir.2000); *John Doe Co. v. United States (In re Grand Jury Proceedings),* 350 F.3d 299, 302 (2d Cir. 2003). By claiming intentional infliction of emotional distress in the third count of his Amended Complaint, Plaintiff has waived the psychotherapist-patient privilege he would otherwise enjoy. Moreover, Defendant contends (which Plaintiff has not disputed), that Plaintiff's counsel represented that he had no objection to the proposed qualified protective order. (Def. Mot. Compel Mem. at 6.) In order to properly defend himself against Sanabria's emotional distress claim, Martins will require Sanabria's mental health records pertaining to post-incident treatment as well as such records predating the August 29, 2005 incident, insofar as they bear on the task of attributing emotional damages to this incident. Based on plaintiff's waiver of the privilege by asserting his intentional infliction of emotional distress claim, therefore, the Qualified Protective Order was proper. However, as stated *infra,* the Court will modify the Order to add precision.

In terms of the general mental health records requested, the Court will allow disclosure of such records dating from August 2000, as bearing on preexisting mental health status. To the extent plaintiff's CMHC records also constitute "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research," 42 U.S.C. § 290dd–2(a), the Court finds that defendant has shown "good cause" for disclosure of such records that came into existence after August 29, 2005, insofar as they bear on plaintiff's emotional distress claim and do not identify the plaintiff as an alcohol or drug abuser. Thus, "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services," 42 U.S.C. § 290dd–2(b), the Qualified Protective Order shall be modified as follows:

> Pursuant to Fed.R.Civ.P. 45; 45 C.F.R. § 164–512(e); Conn. Gen.Stat. §§ 52–146e, 52–146f(5); and 42 U.S.C. § 290dd–2, it is hereby ORDERED that the following protected health information from Yale Psychiatry, Connecticut Mental Health Center, and Latino Mental Health be disclosed to all parties in the above-referenced matter:

> All psychiatric, psychological, mental health disorder, medical documents and records relating to the examination, diagnosis, treatment, care and prognosis of LUIS SANABRIA ... from August 2000 to present; and all records from August 29, 2005 to present of the diagnosis, prognosis, or treatment of LUIS SANABRIA maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, only insofar as such records overlap with the psychiatric, psychological, mental health disorder, medical documents and records relating to the examination, diagnosis, treatment, care and prognosis of LUIS SANABRIA.

> The parties are prohibited from using or disclosing any protected health information for any purpose other than the litigation. It is further ordered that the parties will return to the covered entity or destroy all protected health information at the end of the litigation.

The foregoing Order shall replace the current Qualified Protective Order [Doc. # 34] and modify the subpoenas served accordingly.

For the reasons stated above as concerns the CMHC subpoena, which are applicable as well to the other subpoenaed mental health entities, Defendant's Motion for Order to Compel [Doc. # 50] is granted, and CMHC's Motion to Vacate [Doc. # 46] is granted.

## IV. Conclusion

Therefore, Defendant's Motion for Summary Judgment [Doc. # 53] is denied, Defendant's Motion for Order to Compel [Doc. # 50] is granted, and CMHC's Motion to Vacate [Doc. # 46] is granted.

IT IS SO ORDERED.